# United States Court of Appeals

## For the First Circuit

————————————

No. 99-2031

HILDA RODRIGUEZ, ET AL.,

Plaintiffs, Appellants,

v.

SMITHKLINE BEECHAM, THEIR AGENTS,
OFFICERS, EMPLOYEES AND SUCCESSORS IN INTEREST,

Defendant, Appellee.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

————————————

Before

Torruella, Chief Judge,

Campbell, Senior Circuit Judge,

and Schwarzer,* Senior District Judge.

————————————

José Enrique Colón-Santana for appellants.
Gregory T. Usera, with whom Mariela Rexach-Rexach and Schuster
Usera Aguilo & Santiago were on brief, for appellee.

————————————

* Of the Northern District of California, sitting by designation.

August 16, 2000

_____

**TORRUELLA, Chief Judge.** Before the Court is an appeal from the district court's entry of summary judgment. The district court held that appellant's sex discrimination claims under the Equal Pay Act and Title VII of the Civil Rights Act of 1964 failed as a matter of law and entered judgment in favor of the appellee. We affirm.

## I. BACKGROUND

### A. Appellant's Employment at Smithkline

Appellant Hilda Rodríguez began employment at appellee Smithkline Beecham Pharmaceutical, P.R., Inc. ("Smithkline") in 1979 as an Analytical Chemist, a grade level C position within Smithkline's compensation structure. She was promoted in 1985 to the position of Senior Analyst, with a grade level of E.

In 1986, appellant applied for a lateral transfer to Smithkline's Documentation Department as a Senior Document Monitor; she received the transfer, although initially as a "temporary" assignment. In November of 1986, the Senior Document Monitor position was reevaluated and reclassified as a grade level F position, pursuant to Smithkline's Job Evaluation Program.[1] Appellant's appointment as Senior Documentation Monitor was made permanent in June of 1987. In March of 1988, the title of that position was changed to Senior Monitor. In February 1989, appellant was promoted to Master Records Specialist, a

---

[1] The Job Evaluation Program provides for the regular evaluation of positions to ensure that compensation is commensurate with the duties of the position, relative to other positions in the company.

grade level H position.  In January 1991, she was again promoted, to the position of Quality Assurance Administrator in the Process Operations Management System project, with a job grade level of 5E.

### B.  Alleged Wage Discrimination with Regard to the Document Leader Position

When appellant first joined the Documentation Department in 1986, the position of Documentation Manager was held by Gloria Vales. Vales was compensated at level 7.  In September 1989, Vales was transferred to another department and was replaced by Manuel Llivina. Llivina was transferred in from a grade level 7 position in another department as part of Smithkline's Management Development Program, and he maintained his grade level while serving as Documentation Manager.[2] In August of 1992, Llivina was transferred out of the Documentation Department, again as part of the Management Development Program, and the Documentation Manager position became vacant.

Meanwhile, in July 1991, a new position called Records Management Leader was created in the Documentation Department, at grade level 6.  Rodoberto Feo was transferred to that position from another

---

[2]  The Management Development Program, also called the Leadership Planning Program, protects an employee's grade level as he or she is rotated through different positions with the company for developmental purposes.

-4-

position within the company, and he maintained his previous grade level of 8 pursuant to Smithkline's Personal to Holder policy.[3]

After reassessing departmental needs in 1992, Smithkline decided to eliminate the Documentation Manager and Records Management Leader positions. A new position entitled Documentation Leader was created in January of 1993, and appellant was identified as the candidate to fill the new position. When the new position was evaluated pursuant to the Job Evaluation Program, it was designated a level 6 position. Appellant claims that the difference in grade level (and thus in compensation) compared to that of Llivina and Feo constituted gender-based wage discrimination.

### C. Alleged Discriminatory Failure to Hire or Promote

On January 16, 1995, Edwin López was hired as an Analytical Services Leader or Laboratory Manager, with a grade level of 8, to manage and direct the Quality Control section's analytical laboratories (which included all chemistry laboratories at the facility). As required by the job description, López had a masters degree and significant previous work experience managing an analytical laboratory. Appellant claims, however, that appellee's failure to hire or promote her to the position of Analytical Services Leader, instead of López,

---

[3] The Personal to Holder policy allows the company to utilize a current employee in a lower grade position without negatively impacting the employee's compensation.

constituted sex discrimination.[4] Although she does not hold a masters or doctoral degree, nor had she ever managed an analytical laboratory, appellant claims that her prior experience at Smithkline qualified her for the position.

> **D.** **Alleged Wage Discrimination with Regard to Compliance Process Improver Position**

As Analytical Services Leader, López's responsibilities included (1) managerial and supervisory responsibility for all of Quality Control's[5] analytical laboratory operations; (2) monitoring of all analytical data for submission to regulatory agencies; (3) approval of all analytical reports, Annual Product Review reports, and Water Systems reports; (4) improvement, validation, and automation of current methodology and technology; (5) provision of analytical and technical support for complaints, internal investigations, product development activities, and product transfer areas; (6) development of new and improved analytical methodology, including review of pertinent literature and formulation of recommendations; and (7) extensive budgetary responsibilities for the analytical laboratories.

---

[4] Nowhere does appellant indicate that she applied for this position. However, appellee seems to concede that she was in the pool of potential candidates, apparently pursuant to the company's practice of looking first at current employees when filling vacancies.

[5] Smithkline's Compliance Department is divided into two primary functional areas: Quality Control and Quality Assurance. According to the company, the functions and processes of each are different from those of the other.

Approximately sixty-two employees were under López's supervision as Analytical Services Leader.

In 1995, Smithkline began to implement a new organic structure in the Compliance Department, as part of a facility-wide restructuring. During implementation of the new structure, López was informed that his title would eventually change to that of Compliance Process Improver for the Quality Control section, although his duties would not be affected.[6] The Compliance Process Improver position was reviewed under the Job Evaluation Program and designated a level 6 position. Before the transition was complete, however, Smithkline reassessed its needs and determined that López should retain his duties as head of the laboratories under the title of Compliance Laboratory Strategist. Because this position entailed most of the functions of the Analytical Services Leader position, plus some aspects of the Compliance Process Improver job, the Laboratory Strategist position was designated a level 8 position.[7]

During the implementation of the new organic structure, appellant was also informed that her title would change to Compliance

---

[6] López continued, and still continues, to perform the duties of Analytical Services Leader, although he currently holds the title of Compliance Laboratory Strategist.

[7] In his new position, López has supervisory capacity over seventy-four employees, as well as additional quality control and budgetary duties beyond those described above in relation to the Analytical Services Leader position. Later in 1997, Smithkline's microbiology laboratory was added to the chemistry labs already under López's supervision.

Process Improver, in her case for the Quality Assurance section. Throughout the transitional period, appellant continued to perform her duties as Documentation Leader. On January 1, 1997, appellant's change in position became effective, and she assumed her duties as Compliance Process Improver.[8] As such, appellant's duties included primarily the identification of potential improvement areas and the formulation and implementation of projects to make such improvements. She does not currently have, nor has she ever had, managerial responsibility for any of the laboratories, nor does she supervise any employees or control any budgetary decisions.

### E.  Procedural History

On October 1, 1996, appellant sent a letter to Smithkline complaining of discriminatory treatment. She filed a discrimination charge with the Antidiscrimination Unit of the Puerto Rico Department of Labor and Human Resources on June 13, 1997. Appellant received her notice of right to sue from the Equal Employment Opportunity Commission on March 25, 1998, and she subsequently filed this action in the United States District Court for the District of Puerto Rico, stating claims under the Equal Pay Act and Title VII of the Civil Rights Act of 1964.

---

[8]  This was the same date upon which López became a Laboratory Strategist. The parties dispute whether López was ever actually a Compliance Process Improver.

On July 8, 1999, the district court granted summary judgment in favor of Smithkline, rejecting all of appellant's claims. See Rodríguez v. Smithkline Beecham Pharmaceutical, Puerto Rico, Inc., 62 F. Supp. 2d 374 (D.P.R. 1999).[9] The court first rejected appellant's failure to hire or promote claim as untimely. See id. at 379. The court then proceeded to examine the Title VII wage discrimination claims. Following the majority of federal courts of appeals to have addressed the interplay of the Equal Pay Act ("EPA") and Title VII, the district court held that the Bennett Amendment to Title VII incorporated the EPA statutory defenses to wage discrimination claims but did not otherwise alter the Title VII analysis, including the burden-shifting aspects. See id. at 381-82. Applying existing First Circuit law, the court determined that appellant had failed to make out a prima facie case of discrimination, see id. at 383-84, and further that appellant had not shown Smithkline's proffered reasons to be pretextual, see id. at 384. Finally, the district court rejected appellant's EPA claims, concluding as a matter of law that appellant's job was not substantially similar to that of López nor to that of Llivina or Feo. See id.

---

[9] The court had previously denied a motion by appellant to add an expert to her witness list. See Rodríguez v. Smithkline Beecham Pharmaceutical, P.R., Inc., Civil No. 98-1649(JP) (D.P.R. filed Mar. 25, 1999); id. (D.P.R. filed Apr. 5, 1999) (denying motion for reconsideration).

This appeal followed. In addition to claiming that the district court erred in entering summary judgment against her on all claims, appellant also argues that the court erred in denying her motion to add an expert to her witness list.

## II. LAW AND APPLICATION

### A. Standard of Review

We review orders granting summary judgment de novo, construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in her favor. See GE Supply v. C & G Enters., Inc., 212 F.3d 14, 17 (1st Cir. 2000). We are not limited to accepting or rejecting the district court's rationale; rather, we may affirm the entry of summary judgment on any sufficient ground revealed by the record. See id.

The district court's exclusion of expert testimony is reviewed under an "abuse of discretion" standard. See General Elec. Co. v. Joiner, 522 U.S. 136, 139 (1997).

### B. Equal Pay Act Claims

The Equal Pay Act ("EPA"), codified at 29 U.S.C. § 206(d)(1), states:

> No employer . . . shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages . . . at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal

> skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

An EPA claimant must make a prima facie showing that the employer paid different wages to a member of the opposite sex for substantially equal work.  See Byrd v. Ronayne, 61 F.3d 1026, 1033 (1st Cir. 1995) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)).  Once a prima facie case has been made, the employer then must establish one of the four statutory affirmative defenses to avoid liability.  See id.

Appellant claims that she suffered gender-based wage discrimination in violation of the EPA with respect to two positions -- that of Document Leader, and that of Compliance Process Improver.  Neither claim has merit.

### 1.  Document Leader Position

Appellant claims that she was discriminated against on the basis of her gender when the Document Leader position was classified as a level 6 position.  She bases this contention on the fact that the previous Document Manager was paid at level 7 and the previous Records Management Leader was paid at level 8.  However, appellant has failed to make a prima facie showing that the Document Manager and Records Management Leader positions were substantially equal to the Document

Leader position, and Smithkline has also established that the different pay levels were based on a "factor other than sex."

As the district court properly concluded, the position of Document Leader created in 1993 entailed a substantially different set of responsibilities from those of the Document Manager and Records Management Leader positions. For instance, although there was certainly overlap between the duties of the new position and those of the former positions, several important functions of the Document Manager position were omitted from the role of Document Leader, including responsibility for the microfilming program, the handling of new drug applications, and the preparation of annual reviews. The Document Manager was also responsible for evaluating abnormalities in the manufacturing process and recommending solutions when problems arose, as well as informing the management of significant deviations from standard operating procedures and making sensitive decisions regarding drug recalls. We cannot conclude that these uncontested differences in responsibility were insubstantial, and we agree with the district court that appellant failed to make a prima facie showing of discrimination.

Although the failure to establish a prima facie case is fatal to appellant's claim, we also mention our agreement with the district court that the different wages paid to appellant and the prior Document Manager and Record Management Leader were based on a factor other than

sex. See 29 U.S.C § 206(d)(1)(iv). Smithkline established that both Llivina and Feo were being paid at the level of a prior position pursuant to standing company policies designed, in one instance, to protect employees' salary and grade levels during developmental placements and, in the other, to allow the company to utilize employees at lower level positions without detriment to the employee's compensation. Such programs are "factors other than sex" within the meaning of the EPA and therefore constitute a legitimate basis for wage differentials. Cf. Handy v. New Orleans Hilton Hotel, 532 F. Supp. 68, 72 (E.D. La. 1982) (noting that wage differential was lawful because, inter alia, higher-paid employee's wage was set pursuant to defendant's Personnel Development Program).

## 2. The Compliance Process Improver Position

Appellant next argues that she was discriminated against because she was compensated at level 6 while Edwin López was compensated at level 8, although it appears that the two may have had the same job title. Here again, appellant has failed to make out a prima facie case.

Although job titles may be given some weight in determining whether two employees hold substantially equal positions, the EPA's emphasis is on the responsibilities and functions of the position. See Miranda v. B & B Cash Grocery Store, 975 F.2d 1518, 1533 (11th Cir. 1992) ("Although job titles are entitled to some weight in this

-13-

evaluation [of whether jobs are substantially equal], 'the controlling factor under the Equal Pay Act is job content' -- the actual duties that the respective employees are called upon to perform."). Here, there exists a genuine dispute of fact over whether López at one time held the position of Compliance Process Improver;[10] however, that dispute is not material, because appellant has failed as a matter of law to establish that her responsibilities were substantially equal to those of López. López has had managerial and supervisory responsibility for all of Smithkline's Quality Control analytical laboratories since he became Analytical Services Leader, and he now has responsibility for the microbiology and external compliance labs as well. He oversees the performance of scores of employees and also controls a budget of nearly three million dollars. Appellant has not shown that she ever had comparable responsibility. In sum, we are persuaded that the two positions were in fact substantially dissimilar, and we agree with the district court that appellant has failed to make a prima facie showing of disparate compensation for comparable work. Her EPA claim therefore fails as a matter of law.

### C.  Title VII Claims

Appellant also makes two allegations under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e-2(a). She

---

[10]  It is not contested that his title was changed to Laboratory Strategist on January 1, 1997, the same date that appellant became a Compliance Process Improver.

first alleges that Smithkline discriminatorily failed to hire or promote her to the position of Analytical Service Leader, the position for which López was hired in 1995, and she also claims that she suffered wage discrimination in violation of Title VII with respect to the Document Leader and Compliance Process Improver positions.

### 1. **Failure to Hire or Promote Claim**

Appellant alleges that, when Smithkline hired López to fill the position of Analytical Service Leader in 1995, its failure to hire or promote her to that position constituted sex discrimination prohibited by Title VII. However, as the district court correctly noted, any person seeking relief under Title VII must file a charge with the EEOC "within one hundred and eighty days after the alleged employment practice occurred," 42 U.S.C. § 2000e-5(e)(1), or if a claim is filed with a state or local agency "within three hundred days after the alleged unlawful employment practice occurred," id. López was hired on January 16, 1995. Appellant's charge was not filed until June of 1997. Her cause of action is therefore barred.

Appellant argues that the 300-day limitations period was tolled in her case because the discriminatory actions of the appellee were ongoing and systemic and subject to the continuing violation exception to the limitations period. See Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir. 1998). However, the only evidence offered by appellant to support her contention of a discriminatory policy or

practice by Smithkline is what she optimistically refers to as "statistical" evidence. Although the figures admitted by appellant undeniably demonstrate that more males than females held higher paying positions at Smithkline's facility, the numbers are not provided in a context which would lend them probative value in a statistical sense. To give just one example, no showing has been made of how many females applied for higher-paying positions, nor of how many qualified females there may have been in any relevant pool of potential employees. See Blizard v. Frechette, 601 F.2d 1217, 1223-24 (1st Cir. 1979) (upholding exclusion of statistical evidence because, inter alia, "appellant's offer was in no way related to the available pool of qualified female applicants for the positions filled predominantly by males"). Although we recognize that statistical evidence can be a valid, and often powerful, means of proving discriminatory practices, the numbers offered by appellant fall far short of establishing any such discrimination by Smithkline. The continuing violation doctrine has no application to appellant's case, and her failure to hire or promote claim is time-barred.

## 2.  **Wage Discrimination**

Appellant's Title VII wage discrimination claim fails for the same reason that her EPA wage discrimination contention failed -- she has not made a prima facie showing that she was paid less than a male employee for substantially equal work.

While noting that the federal courts of appeals have disagreed over the effect of the Bennett Amendment to Title VII,[11] the district court analyzed appellant's wage discrimination claim under the burden-shifting evidentiary framework generally applied to Title VII allegations.[12]  See Rodríguez, 62 F. Supp. 2d at 382.  In doing so, the

_____

[11]   The Bennett Amendment states:

> It shall not be an unlawful employment practice under [Title VII] for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiating is authorized by the provisions of [the EPA].

42 U.S.C. § 2000e-2(h).  The disagreement among the courts of appeals has been over whether the Amendment merely incorporates the EPA's statutory affirmative defenses or whether the Amendment alters the actual evidentiary framework and analysis of Title VII wage discrimination claims to incorporate the liability standards of the EPA.  See Rodríguez, 62 F. Supp. 2d at 381-82 (discussing the circuit split).  We need not resolve that question in this case, because appellant failed to make a prima facie case under either the EPA or the general Title VII framework.

[12]  We note the United States Supreme Court's recent decision in Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2109 (2000), in which the Court held that, under the McDonnell Douglas burden-shifting analysis, a plaintiff may rely on her prima facie case, together with a showing that the defendant's proffered reasons for the adverse

court properly found that appellant had failed to make a prima facie showing of gender-based wage discrimination.  See id. at 383-84.

As we set forth above, the uncontested facts before the district court indicate that appellant's job functions and responsibilities were not substantially similar or comparable to those of Document Manager Llivina or Records Management Leader Feo, nor to those of Edwin López.  Absent such a showing, plaintiff's Title VII claim fails as a matter of law for lack of a prima facie case.

### D.  **Exclusion of Expert Testimony**

Finally, appellant argues, almost in passing, that the district court erred in excluding the testimony of her proposed expert. We hold that the district court did not abuse its discretion.  See General Elec. Co. v. Joiner, 522 U.S. 136, 139 (1997) (abuse of discretion standard of review applies to admission or exclusion of expert testimony).

The district court's orders make clear that appellant had failed to comply with the court's scheduling orders and was attempting to add an expert a mere two weeks before the deadline for filing

employment action were false, without further demonstrating that the defendant's stated reasons were motivated by a discriminatory animus. Although the district court's reference to the so-called "pretext-plus" standard, see Rodríguez, 62 F. Supp. 2d at 384-85, was therefore in error, such error does not require reversal because Smithkline is entitled to judgment as a matter of law on the basis that appellant failed to make out a prima facie case of wage discrimination (thus never reaching the subsequent stages of the burden-shifting analysis).

dispositive motions. Such noncompliance with court orders, together with the fact that appellant failed to even specify the area of the witness's expertise except to say that he would testify with respect to her EPA and Title VII claims, persuades us that the district court was well justified in excluding the proposed testimony. See Atlas Truck Leasing, Inc. v. First NH Banks, Inc., 808 F.2d 902, 903-04 (1st Cir. 1987) (district court has wide latitude in formulating pretrial orders and imposing sanctions for noncompliance and will be reversed only when ruling results in clear injustice).

## III. CONCLUSION

For the reasons set forth above, we hold that the district court properly granted summary judgment in favor of Smithkline and against appellant on all of her EPA and Title VII claims.

**Affirmed.**