**Nidia ACEVEDO, Plaintiff,**

v.

**JOHNSON & JOHNSON–JANSSEN PHARMACEUTICAL, Defendant.**

**Civil No. 99–2101 (JAG).**

United States District Court, D. Puerto Rico.

Dec. 13, 2002.

Wilma E. Reveron–Collazo, San Juan, PR, for plaintiff.

Carl E. Schuster, Anabel Rodriguez–Alonso, Schuster Usera Aguilo & Santiago, San Juan, PR, for defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On September 30, 1999, plaintiff Nidia Acevedo (hereinafter "Acevedo") filed this action against her former employer Johnson & Johnson–Janssen Pharmaceutical (hereinafter "Janssen"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e ("Title VII"). Specifically, Acevedo alleges that Janssen unlawfully discriminated against her on account of her gender when it failed to promote her, and that Janssen's discriminatory acts culminated in her constructive discharge. Acevedo also brings forth several supplemental state law claims.

Janssen filed a motion for summary judgment on May 15, 2001. (Docket No. 43), which Acevedo opposed on August 15, 2001. (Docket No. 50.) Janssen filed a reply to Acevedo's opposition on September 19, 2001. (Docket No. 56.) After a careful review of the record, the Court concludes that summary judgment is warranted.

### SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). The critical question is whether a genuine issue of material fact exists. A genuine issue exists if there is sufficient evidence supporting the claimed

factual dispute to require a choice between the parties' differing versions of the truth at trial. *Morris v. Government Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir.1994); *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of the suit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir.1995); *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994). On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. v. Canadian Pac. Ltd.*, 133 F.3d 103, 106 (1st Cir.1997). Nonetheless, in employment discrimination cases, " 'where elusive concepts such as motive or intent are at issue,' [the aforementioned] standard compels summary judgment if the non-moving party 'rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.' " *Feliciano de la Cruz v. El Conquistador Resort and Country Club*, 218 F.3d 1, 5 (1st Cir.2000)(citing *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)). *See also Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000).

### FACTUAL BACKGROUND

"Following conventional summary judgment praxis, . . . [this Court] limn[s] the facts in the light most congenial to the party opposing the motion for brevis disposition," in this case, Acevedo.[1] *Suarez*, 229 F.3d at 51 (internal citation omitted).

---

1. The Court will only consider facts which are supported by the record in accordance with Local Rule 311.12.

2. Acevedo's responsibilities as Regulatory Compliance Manager are described in detail in Docket No. 43, Exhibit Y.

Acevedo began working for Janssen on or about January 9, 1995, as Regulatory Compliance Manager.[2] Thereafter, in November of 1995, Edwin Rodríguez ("Rodríguez") was appointed Q.A. Manager, while Eric Olivieri ("Olivieri") was appointed Q.A. Project Manager. (Docket No. 43, Exhibits F and G).

John Ortiz ("Ortiz") worked as Acevedo's direct supervisor. Ortiz, described his relationship with Acevedo during 1995 and 1996 as "good." (Docket No. 43, Exhibit B at 24). Ortiz prepared Acevedo's performance evaluation for 1995 and rated her work as "outstanding".[3] (Docket No. 43, Exhibit B at 23; Exhibit D).

The Company's upper management recognized Acevedo's work in a November 1995 letter written by Hank Avallone, Executive Director of Compliance and Training. (Docket No. 50, Exhibit 2). Early in 1997, Acevedo again received recognition from the Company's headquarters for her efforts. (Docket No. 50, Exhibit 3). It is undisputed that throughout her employment with Janssen, Acevedo received annual salary increases and several Recognition and Cash Awards based on her job performance. (Docket No. 43, Exhibit A at 165–66; Docket No. 50, Exhibits 5, 6, and 7 at 101–02).

### I. The unfulfilled opportunities for promotion:

During her employment at Janssen, Acevedo was passed up for promotion on three different occasions: once in 1996 for the Quicksolv position, and in 1997 for the two openings for Associate Director in the

---

3. Juanita Hawkins, Janssen's Vice President of Quality Assurance approved the performance evaluation.

QA/QC & Regulatory Affairs Department. All three positions were given to male co-workers. In addition, Acevedo expressed interest in a lateral position, that of QA Manager. Janssen instead appointed a male co-worker.

a) *The Quicksolv position:*

On June 21, 1996, the Company announced and posted an opening for the position of Quicksolv Manufacturing Manager. On June 24, 1996, Acevedo formally requested to be considered for that position. (Docket No. 43, Exhibit J). Acevedo and Angel Natal (hereinafter "Natal") were the final candidates being considered for the position. (Docket No. 43. Exhibit A at 56–60). In October of 1996, the company announced the selection of Natal[4] as Quicksolv Manager. Defendant contends that Natal's management and manufacturing experience exceeded Acevedo's. (Docket No. 43, Exhibit K; Exhibit P at 40–41; Exhibit C at 78–79).

b) *The Two Associate Director Positions:*

During June 1997, Janssen embarked in a reorganization of the QA/QC & Regulatory Affairs Department. (Docket No. 43, Exhibit Y). As a result of this reorganization, the Company transferred Ortiz, who was the director of the department, to Company headquarters and appointed him Director of New Program Strategic Planning. To make up for Ortiz's vacancy, Janssen created two Associate Director positions. A succession plan prepared in April of 1997 identified Acevedo as a potential replacement for Ortiz. (Docket No. 43, Exhibit E). Nonetheless, in September of 1997, Jenssen appointed Edwin Rodríguez and Eric Olivieri as Associate Directors of the QA/QC & Regulatory Af-

fairs Department. (Docket No. 43, Exhibit A at 82; Exhibit B at 77).

Janssen contends that even though it did not interview Acevedo for these two positions, it still considered her a potential candidate. (Docket No. 43, Exhibit B at 91; Exhibit C at 16–21). Janssen further asserts that it passed up Acevedo for the positions because her skills were below those of the other candidates. Specifically, Janssen maintains that Acevedo lacked experience in the area of manufacturing and did not have strong budgeting or capital appropriation experience. In addition, there were some issues regarding Acevedo's alleged lack of effectiveness with interpersonal relationships. (Docket No. 43, Exhibit C at 17–21).

Janssen has brought forth evidence of both Rodríguez's and Olivieri's professional qualifications. The record shows that Olivieri had nine (9) years of managerial experience and twelve (12) years of field experience holding positions such as Director of Regulatory Affairs and Quality Affairs, Quality Manager, Technical Service Manager, and Operations Manager. (Docket No. 43, Exhibit N). At the time of his appointment, Rodríguez also had over sixteen (16) years of experience in the field, including areas such as quality assurance. (Docket No. 43, Exhibit O; Exhibit L, p. 95–97).

c) *The opening of the QA management position:*

As a result of Rodríguez'z appointment as Associate Director, the QA Manager position he held became vacant. (Docket No. 43, Exhibit A at 135). Acevedo contacted Hawkins and expressed her interest in occupying this lateral position. Acevedo asserts that she sought the QA Manager position to broaden her expertise. Even

---

**4.** In 1996 Natal had been with the Johnson & Johnson family of companies for over twelve (12) years, most of them in management positions. (Docket No. 43, Exhibit K.)

though Hawkins informed Acevedo that she would consider her for the position, she never interviewed her.

The Company eventually appointed Hildebrando Cruz ("Cruz") as QA Manager. It is uncontested that Cruz had prior experience in the Quality Assurance field, while Acevedo had none. (Docket No. 43, Exhibit A at 152).

## II. The alleged instances of disparate treatment

Acevedo alleges that the arrival of several male employees who developed a close relationship with Ortiz, the supervisor, signaled the beginning of a "boys club," and resulted in discriminatory disparate treatment towards her.

In February of 1997, during a regulatory inspection of the Quicksolv operation by the United Kingdom government, Ortiz appointed Acevedo leader of the support team and asked Francisco Franco ("Franco") to assist him with the inspection. (Docket No. 43, Exhibit A at 107–8). Franco was the representative for Quality Assurance in the team running the Quicksolv operation. (Docket No. 43, Exhibit B at 108–09; Exhibit Y). Janssen characterizes Acevedo's assignment as extremely important, since she supposedly had to review and approve each document prior to showing it to the inspectors. (Docket No. 43, Exhibit C at 98). On the other hand, Acevedo contends that she was confined to a room pushing documents, and that Ortiz's appointment of Franco to participate in the assistance of the inspection,

evinces Ortiz's discriminatory animus towards her. Janssen further claims that Acevedo's performance during the inspection was below expectations since she did not review documents appropriately. (Docket No. 43, Exhibit C at 98–99; 103–05).

To support her claim that Janssen's adverse employment action was tainted by discriminatory animus, Acevedo contends that her job performance evaluations did not accurately reflect her work product. Acevedo's 1996 performance appraisal evaluated her work as "competent," and identified several areas in which she needed improvement.[5] (Docket No. 43, Exhibit A at 145; Exhibit C at 60–62, 71–73.) It is undisputed that Acevedo's overall evaluation for 1996 was not as good as the previous year's evaluation.[6] (Docket No. 43, Exhibit M.)

Finally in September of 1997, the Company informed Acevedo that it would reduce the scope of her responsibilities as Regulatory Compliance Manager. (Docket No. 43, Exhibit A at 141–42; 177–78.) Rodríguez informed Acevedo that he wanted to relieve her of her 'specification responsibilities' and have her focus solely on compliance issues. Rodríguez assigned the 'specification responsibilities' to Maria Vargas. Under this arrangement, Acevedo would remain in charge of all internal and external audits, inspections and compliance in general. (Docket No. 43; Exhibit L at 55–61.) Rodríguez and Juanita Hawkins concurred that Janssen's business needs required that Acevedo's responsibilities be refocused. (Docket No. 43,

---

**5.** Janssen alleges that Acevedo needed to improve her performance in several areas: 1) the business planning implementation of the specifications area; 2) handling multiple projects and meeting deadlines; and 3) problems regarding the DEA documentation responsibilities. (Docket No. 43, Exhibit M; Exhibit C at 71–78 and 94.)

**6.** For example, Acevedo received a 4.6 rating in the category of "works effectively as a member of the team" in her 1995 appraisal evaluation. Her rating went down to 2.6 in her 1996 performance evaluation, and even further down to 2.0 during the mid-year review of 1997. (Docket No. 43, Exhibits D and M.)

Exhibit C at 22–23, 30–32; Exhibit L at 67.) Janssen alleges that it is a common practice to change or alter an employee's scope of responsibilities depending on the company's business needs.

Soon after the reduction in the scope of her responsibilities, Acevedo informed Janssen's management that she had no option but to resign. Carmen Rodríguez and Edwin Rodríguez asked Acevedo to reconsider her decision. Nonetheless, on October 23, 1997, Acevedo tendered her letter of resignation. (Docket No. 43, Exhibit A at 169–70; L at 79). In a letter dated October 27, 1997, Edwin Rodríguez reiterated that he valued Acevedo as an employee and regretted her decision to resign. (Docket No. 43, Exhibit S.) After Acevedo left, her position remained open until November of 1997, when the Company appointed Maria Vargas to the Regulatory Compliance Manager position. (Docket No. 43, Exhibit L at 81.)

### BURDEN–SHIFTING FRAMEWORK

Acevedo alleges that Janssen discriminated against her when it failed to promote her because of her sex, and that this gender-based discrimination ultimately resulted in Acevedo's constructive discharge. Because Acevedo fails to produce direct evidence of sex discrimination, this Court will look at the totality of the evidence guided by the three-stage burden-shifting mechanism set forth *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Rivera–Rodriguez v. Frito Lay Snacks Caribbean,* 265 F.3d 15, 25 (1st Cir.2001); *Feliciano de la Cruz v. El Conquistador Resort and Country Club,* 218 F.3d at 5–6; *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 429 (1st Cir.2000); *Rodriguez–Cuer-*

*vos v. Wal–Mart Stores, Inc.,* 181 F.3d 15, 19 (1st Cir.1999).

#### 1.

Under this analytical framework, plaintiff Acevedo shoulders the initial burden of establishing a *prima facie* case of sex discrimination. To do this, in the context of a 'failure to promote' case, Acevedo must show that: "(i) she was a member of a protected class; (ii) she was qualified for the . . . position [she sought]; (iii) she was not hired despite her qualifications; and (iv) the job was given to a person outside the protected group." *Keyes v. Secretary of the Navy,* 853 F.2d 1016, 1023 (1st Cir.1988); *see also Straughn v. Delta Air Lines, Inc.,* 250 F.3d 23, 33 (1st Cir.2001); *Santiago–Ramos,* 217 F.3d 46, 54 (1st Cir. 2000).

The task of establishing a *prima facie* case "is not onerous." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d at 54 (citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The Court finds that Acevedo proffered sufficient evidence to establish a *prima facie* case of sex discrimination. She easily meets three of the four elements in the *prima facie* case: she is a woman; she was passed up for promotion on several occasions despite her qualifications[7]; and the jobs she sought to obtain were ultimately given to male employees. Not surprisingly, defendant argues that the reason Acevedo was passed up for promotion was because her male counterparts were better qualified than Acevedo. The record shows that the male employees who were hired for the positions Acevedo coveted were highly qualified. Nevertheless, this Court finds that Acevedo met her

---

**7.** The record shows that Acevedo received recognition for her work by the Company's central office, that she received several cash awards for her efforts, and that at least one of her evaluations rated her work as "outstanding."

minimal *prima facie* burden by setting forth evidence showing that: 1) she had a significant amount of experience within the department in which she sought the promotions; 2) her job performance evaluations were favorable; and 3) she had the educational background required for the positions.

### 2.

"At the second stage of the [Mc Donnell Douglas] inquiry, the burden shifts to the employer . . . to state a legitimate, nondiscriminatory reason for the adverse employment action." *Santiago–Ramos,* 217 F.3d at 54 (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). The Court finds that Janssen has proffered ample evidence to fulfill its burden of production.

### a. The Quicksolv Manufacturing Manager position:

Janssen asserts that Acevedo's claim as to the Quicksolv position is time-barred, because she failed to bring her administrative claim within Title VII's 300–day limitations period. It is uncontested that the Company appointed Natal to the Quicksolv position in October of 1996, and that Acevedo did not file a discrimination charge until April 21, 1998, outside the 300–day period. Thus, unless Acevedo can establish that Janssen's discriminatory actions were "ongoing and systemic, and [therefore] subject to the continuing violation exception to the limitations period," her action, as it pertains to the Quicksolv position, is time-barred. *Rodriguez v. Smithkline Beecham,* 224 F.3d 1, 7 (1st Cir. 2000).

▋ For purposes of this analysis only, the Court will assume that there is sufficient evidence to sustain Acevedo's theory that there was a continuing violation, warranting an exception to the 300–day limitations period. Nonetheless, the record clearly reflects that Janssen had a legitimate non-discriminatory reason for hiring Natal—namely, that he was better qualified for the position. Not only does the record reflect that Natal had more experience than Acevedo in the areas of management and manufacturing, but at the time of his appointment Natal had been with the Company for over twelve (12) years, while Acevedo had barely been with Janssen for over a year. Accordingly, Janssen has proffered evidence of a legitimate non-discriminatory reason to appoint Natal to the position of Quicksolv Manager.

### b. The Associate Director positions:

Acevedo argues that Janssen passed her over for promotion of the two Associate Director positions created as a result of Ortiz's transfer. The Company filled the positions with two of her male co-workers: Rodríguez and Olivieri.

The undisputed evidence shows that both Olivieri and Rodríguez had very good credentials, and that they both had many more years of managerial experience than Acevedo. To state it succinctly, Janssen does not contend that Acevedo was not qualified for the Associate Director positions, but rather that Olivieri's and Rodríguez's credentials exceeded Acevedo's, primarily because her experience was limited to the area of regulatory compliance.

### c. The lateral move:

It is undisputed that Acevedo expressed her interest in the QA Manager, a position which was lateral to the one she held. The Company appointed Cruz, another male employee, as QA Manager. Janssen has set forth evidence of Cruz's prior experience in the Quality Assurance field, and of Acevedo's lack of experience in the field. (Docket No. 43, Exhibit A at 152.)

Janssen has set forth enough evidence to satisfy its burden of production under the *McDonnell Douglas* test to advance a legitimate nondiscriminatory rationale for hiring Natal, Rodriguez, Olivieri, and Cruz as opposed to plaintiff—namely, that they were better qualified for the positions. *See, e.g., Gu v. Boston Police Dept.*, 312 F.3d 6, 11 (1st Cir.2002)(accepting legitimacy of hiring applicants who are better qualified and/or better suited for a particular position).

### 3.

Once the *McDonnell Douglas* framework drops out of the case, the question at the summary judgment stage is whether Acevedo has produced sufficient evidence from which a fact finder could reasonably conclude that Janssen's decision not to promote her was driven by discriminatory animus. *See, e.g., Zapata–Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 45 (1st Cir.2002)(discussing the *McDonnell Douglas* framework in the context of a Title VII claim for national origin discrimination); *see also Santiago–Ramos*, 217 F.3d at 54. To survive the motion for summary judgment, Acevedo must introduce sufficient evidence to support two findings: (1) that Janssen's articulated reason for the adverse employment action is pretextual; and (2) that the true reason is discriminatory animus. *See Straughn*, 250 F.3d at 34; *Feliciano de la Cruz*, 218 F.3d at 6; *Mejias Miranda v. BBII Acquisition Corp.*, 120 F.Supp.2d 157, 166 (D.P.R. 2000). *See, e.g., Rivas Rosado v. Radio Shack, Inc.*, 312 F.3d 532 (1st Cir.2002).

### a. Pretext:

■ Acevedo insists that Janssen's argument that the promoted male co-workers were better qualified than her is but a guise to mask Janssen's discriminatory animus. The record does not support her contention. It is undisputed that all the promoted male co-workers were qualified to assume their new assignments. In fact, all of them had more years of experience than Acevedo in the area of manufacturing.

Acevedo alleges that Ortiz, her supervisor, favored male employees, in particular Olivieri and Rodríguez, and that this favoritism weighed heavily during the promotion process. Acevedo's assertions, however, are completely unsubstantiated by the record. The record shows that a group of upper level managers, including Juanita Hawkins, decided to appoint Natal, Olivieri and Rodríguez to the vacant positions; and there is no evidence suggesting that Ortiz tainted the selection process with discriminatory animus. The Court cannot and will not second guess the business decisions of an employer, or impose its subjective judgment on which characteristics Janssen should have weighed more than others when evaluating Acevedo's performance vis a vis her male co-workers and/or deciding which employees to promote. "The First Circuit has stated repeatedly that Courts will not assume the role of super personnel departments to assess the merits or even the rationality of non discriminatory business reasons." *Mejias Miranda*, 120 F.Supp.2d at 166 (citing *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 674 (1st Cir.1996)). Acevedo's evidence of pretext is at best circumstantial and, even when taken in the light most favorable to her, fails to demonstrate that Janssen's asserted reasons for promoting her male counterparts are pretextual.

### b. Discriminatory Animus:

Even if the Court assumed that Janssen made a mistake in judgment, and that indeed Acevedo was a better candidate for the available vacancies, there is no evidence from which a reasonable fact finder could conclude that Janssen decided not to

promote Acevedo because she was a woman. "Like any other employer, [Janssen] was at liberty to err in filling a post.... Errors in judgment are not the stuff of Title VII transgressions—so long as the 'mistakes' are not a coverup for invidious discrimination...." *Keyes v. Secretary of the Navy*, 853 F.2d at 1026 (citations omitted).

In an effort to prove that Janssen's true motive for not promoting her was discriminatory, Acevedo makes the following allegations: 1) that Ortiz purposefully advanced Olivieri's and Rodriguez's careers, while jeopardizing hers when he tainted the performance evaluation process; 2) that Ortiz created a "boys club" from which she was excluded; 3) that the fact that she was left in the room during the UK inspection evinces Ortiz's preference for the 'boys'; 4) that the fact that her responsibilities were reduced evinces Janssen's discriminatory animus; and 5) that the company did nothing to stop Ortiz's alleged discriminatory behavior although another employee had complained of his behavior in the past.

As previously noted, Acevedo's suggestion that Ortiz advanced Olivieri's and Rodríguez's careers by giving them an unjustified "boost" in their evaluations[8] is not supported by the record. Acevedo has failed to produce evidence suggesting that Olivieri's and Rodriguez's work performance did not conform with their respective evaluations, or that their work was below Janssen's expectations. Acevedo's suggestion that Ortiz, Rodríguez and Olivieri had established a "boys club" from

which was excluded, is nothing but an unsubstantiated characterization.

As to the incident with the UK inspection, the evidence suggests that Ortiz did nothing else but make a legitimate business decision as to which was the best way to handle the inspection. At most, the evidence shows that Acevedo and Ortiz had differing views as to which way the inspection should be conducted, and since Ortiz was the supervisor, his view prevailed.

It is uncontested that Acevedo's responsibilities were reduced as a result of the Company's reorganization efforts. Acevedo's salary was not affected by the restructuring, and some of her responsibilities were assigned to Vargas, another female employee, so that Acevedo could concentrate on the issue of 'regulatory compliance.' Acevedo has failed to produce evidence to discredit Janssen's nondiscriminatory business decision.

Acevedo tries to bring forth evidence of a sexual harassment claim brought against Janssen by another employee in 1994, implicating Ortiz. The Court will not consider this prior lawsuit as part of the summary judgment record because: 1) the case was dismissed without a factual finding as a result of the parties' stipulation; and, 2) the Court had forewarned Acevedo that evidence of Ortiz's alleged sexual preferences was not relevant to her claim of employment discrimination. There is no evidence on the record that Acevedo complained to any of her other supervisors of Ortiz's alleged discriminatory practices[9], or of the fact that she felt that she was

---

8. There is ample discussion on the record as to the lapse of time between the evaluations and the day in which the same were discussed between the supervisor and his/her subordinate. Since this practice appeared to be habitual at Janssen and affected all employees equally, the Court finds it is immaterial to the discussion.

9. Acevedo mentions in several of her motions that she filed a formal complaint with Janssen due to Ortiz's alleged discriminatory practices, however, there is no evidence of that complaint in Acevedo's 311.12 statement of facts. (Docket No. 50).

being excluded by Ortiz, Olivieri and Rodríguez because she was a woman.

In view of the aforementioned discussion, the Court finds that Acevedo has failed to generate a genuine issue of material fact regarding either pretext or disparate treatment in relation to her Title VII gender discrimination claim.

 In her complaint Acevedo also alleges that she was constructively discharged and that she was subjected to a hostile work environment.[10] It is unclear from a reading of the pleadings whether Acevedo is making the aforementioned allegations under Title VII or under state law. Nevertheless, this Court finds that Acevedo has failed to adduce enough evidence at the summary judgment stage to sustain either a constructive discharge[11] claim and/or a hostile work environment claim under Title VII. The burden of proof in the context of a hostile work environment and/or a constructive claim is much higher than in the context of a disparate treatment case. Thus, it is axiomatic that Acevedo's failure to present enough evidence from which a reasonable fact finder could conclude that Janssen's actions were tainted by discriminatory animus in essence disposes of her other Title VII claims.

### CONCLUSION

In view of the aforementioned, Janssen's Motion for Summary Judgment (Docket No. 43) is hereby **GRANTED.** Acevedo's claims under Title VII are **DISMISSED WITH PREJUDICE.** The supplemental law claims are **DISMISSED WITHOUT PREJUDICE.**

IT IS SO ORDERED.

10. The elements of a Title VII hostile work environment claim are discussed in detail in *O'Rourke v. City of Providence,* 235 F.3d 713, 728(1st Cir.2001).

11. To prove constructive discharge under Title VII Acevedo would need to establish that Janssen "imposed 'working conditions so intolerable ... that a reasonable person would feel compelled to forsake [her] job rather to submit to looming indignities.'" *Landrau–Romero v. Banco Popular De Puerto Rico,* 212

F.3d 607, 613 (1st Cir.2000) (citations omitted). "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim.... Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge, as is a discriminatory failure to promote." *Brown v. Kinney Shoe Corp.,* 237 F.3d 556, 565 (5th Cir.2001) (citations omitted).