Luis M. RIOS, Plaintiff,

v.

Donald RUMSFELD, Defendant.

No. CIV. 03–1375(JAF).

United States District Court,
D. Puerto Rico.

July 6, 2004.

Lilliam E. Mendoza–Toro, Esq., Mendoza Toro Law Office, San Juan, PR, for Plaintiff.

H. Garcia, U.S. Attorney, Ginette L. Milanes, Asst. U.S. Attorney, San Juan, PR, for Defendant.

## *OPINION AND ORDER*

FUSTE, Chief Judge.

Plaintiff Luis M. Ríos ("Plaintiff"), brings the present action against Defen-

dant Donald H. Rumsfeld ("Defendant") alleging violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (2003); and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a (2003), invoking this court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. *Docket Document No. 1.* Plaintiff seeks, inter alia, compensatory damages, back pay, costs, and attorney's fees, as well as appointment to any of the positions of Assistant Principal in question. *Id.*

Defendant moves to dismiss and for summary judgment. *Docket Document No. 8.* Plaintiff opposes the motion and moves for summary judgment. *Docket Document Nos. 12, 19.*

## I.

### *Factual and Procedural Synopsis*

Plaintiff is a United States citizen and resides in Puerto Rico. *Docket Document No. 1.* He is a native of Puerto Rico. *Id.* Plaintiff has been employed as a teacher with the Antilles Consolidated School System ("ACSS") in Fort Buchanan, Puerto Rico, since September 1987 and as a teacher since August 1989. *Id.; Docket Document No. 8, DEX. 6, Exh. 38.* The Department of Defense Education Activity, a field activity of the United States Department of Defense, operates the ACSS for the children of the Department of Defense's employees. *Docket Document No. 8.* Defendant is the Secretary of the United States Department of Defense. *Docket Document No. 1.* Defendant is being sued in his official capacity. *Id.*

Plaintiff claims that his non-selection for four administrative positions at ACSS during the 1998–1999 and 1999–2000 school years was based alternatively on his national origin or on retaliation due to his prior filing of an Equal Employment Opportunity ("EEO") complaint. *Id.* Plaintiff

alleges that Defendant discriminated against him in 1998 and in 1999 based on his national origin when he was not selected to be the Assistant Principal of either the Antilles Intermediate School ("AIS") or the Ramey School. *Id.* Plaintiff further alleges that he was not selected for the positions of Principal and Assistant Principal of the Antilles Elementary School ("AES") due to Defendant's retaliatory animus against him for his filing of an EEO complaint. *Id.*

On April 7, 2003, Plaintiff filed the present complaint. *Id.* On February 2, 2004, Defendant moved to dismiss and for summary judgment, arguing that: (1) Plaintiff's 42 U.S.C. § 1981 claims must be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted; (2) Plaintiff's claim with respect to the Ramey School must be dismissed because Plaintiff has failed to exhaust his administrative remedies; (3) Plaintiff has failed to show national origin discrimination with regard to his application for the position of Assistant Principal at AIS; and (4) Plaintiff has not shown retaliation against him with respect to Defendant's hiring selections at AES. *Docket Document No. 8.* Plaintiff submitted a pro-se opposition on April 30, 2004, and an opposition by later-retained counsel on June 9, 2004. *Docket Document Nos. 12, 19.* Plaintiff also moved for summary judgment on June 9, 2004. *Docket Document No. 19.*

## II.

### *Applicable Legal Standards*

### A. *Motion to Dismiss Standard under Rule 12(b)(1)*

Under Rule 12(b)(1), a defendant may move to dismiss an action against him for lack of federal subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). Since

federal courts are courts of limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating its existence. *See Skwira v. United States,* 344 F.3d 64, 71 (1st Cir.2003) (citing *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.1995)). In assessing a motion to dismiss for lack of subject matter jurisdiction, a district court must accept the plaintiff's version of the relevant facts, and draw all reasonable inferences from such jurisdictionally-significant facts in the plaintiff's favor. *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir.2001). In addition, a court may review any evidence, including submitted affidavits and depositions, to resolve factual disputes bearing upon the existence of jurisdiction. *Id.* at 363.

### B. *Motion for Summary Judgment Standard under Rule 56(c)*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir.2004).

▅▅▅ The moving party carries the burden of establishing that there is no genuine issue as to any material fact; however the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden has two components: (1) an initial burden of pro-

duction, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* at 331, 106 S.Ct. 2548.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." *Euromodas, Inc. v. Zanella,* 368 F.3d 11, 2004 WL 1088739, at *4 (1st Cir.2004) (citing *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir. 1992)).

### III.

### *Analysis*

Defendant moves for dismissal and summary judgment of Plaintiff's complaint on four grounds: (1) Plaintiff's claim based on 42 U.S.C. § 1981, or anything other than Title VII should be dismissed for lack of subject matter jurisdiction; (2) Plaintiff has failed to exhaust his administrative remedies regarding his claim of national origin discrimination as the basis of his denial of the Assistant Principal position at Ramey School; (3) Plaintiff has not shown national origin discrimination with regard to his application for the position of Assistant Principal at AIS; and (4) Plaintiff has not shown retaliation against him with respect to Defendant's hiring selections at AES. *Docket Document No. 8.* Plaintiff has opposed the motion. *Docket Document Nos. 12, 19.* We consider each of Defendant's arguments in turn.

### A. *Employment Discrimination Claims Under Non–Title VII Statutes*

. Defendant moves to dismiss Plaintiff's employment discrimination claims based

on 42 U.S.C. § 1981, arguing that, because the Civil Rights Act of 1964 provides the exclusive remedy to federal employees for intentional employment discrimination in employment decisions by the federal government, these claims must be dismissed for lack of subject matter jurisdiction. *Docket Document No. 8.* Plaintiff does not contest Defendant's legal interpretation.

■ In *Brown v. General Services Administration,* 425 U.S. 820, 829, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the Supreme Court clarified that the Civil Rights Act of 1964 provides "an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." The First Circuit has embraced the Court's holding and has confirmed that 42 U.S.C. § 2000e " 'provides the exclusive judicial remedy for claims of discrimination in federal employment.' " *Misra v. Smithsonian Astrophsical Observatory,* 248 F.3d 37, 39 (1st Cir.2001) (citing *Brown,* 425 U.S. at 835, 96 S.Ct. 1961); *see also Keller v. Prince George's County,* 827 F.2d 952, 956 (4th Cir.1987).

Accordingly, to the extent that Plaintiff proffers employment discrimination claims premised on 42 U.S.C. § 1981, such causes of action are dismissed.

### B. Failure to Exhaust Administrative Remedies: Ramey School

Plaintiff submits that he was not appointed to the position of Assistant Principal at Ramey School due to Defendant's unlawful discrimination. *Docket Document No. 1.* Defendant argues that Plaintiff never raised the present claim of Title VII national origin discrimination in his 1999 EEO filing. *Docket Document No. 8.* Rather, Plaintiff's EEO complaint was based on reprisal, a claim which Plaintiff does not allege in connection with the Assistant Principal position at Ramey School. *Id.* Thus, Defendant avers, Plaintiff has

failed to exhaust his administrative remedies with respect to his national origin claim. *Id.*

■ It is well-established that in order to maintain an action under Title VII, a plaintiff is required to exhaust his administrative remedies prior to filing suit in federal court. 42 U.S.C. § 2000e–5; *Bonilla v. Muebles J.J. Alvarez, Inc.,* 194 F.3d 275, 278 (1st Cir.1999) (recognizing that a claimant who wishes to recover for an asserted Title VII violation must first "exhaust administrative remedies by filing a charge with the EEOC, or alternatively, with an appropriate state or local agency, within the prescribed time limits."); *Morales–Vallellanes v. Potter,* 339 F.3d 9, 18 (1st Cir.2003).

■ The purpose of this exhaustion requirement is to "provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." *Lattimore v. Polaroid Corp.,* 99 F.3d 456, 464 (1st Cir.1996). As such, a civil complaint's scope must be limited by the charge filed with the EEOC (or appropriate administrative agency) and the investigation which can reasonably be expected to result from that filing. *Powers v. Grinnell Corp.,* 915 F.2d 34, 38 (1st Cir.1990). Thus, although

'[a]n administrative charge is not a blueprint for the litigation to follow ... [and] the exact wording of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow ... the critical question is whether the claims set forth in the civil complaint come within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'

*White v. N.H. Dep't of Corr.,* 221 F.3d 254, 263 (1st Cir.2000) (quoting *Powers,* 915 F.2d at 38).

■ Defendant avers that on July 6, 1999 Plaintiff filed a formal EEO complaint alleging that his non-selection for the position of Assistant Principal at Ramey School was based on reprisal, not on national origin discrimination, as Plaintiff suggests. *Docket Document No. 8.* Defendant argues that Plaintiff's claim of national origin discrimination in relation to his non-selection at Ramey School does not "grow out" of Plaintiff's original administrative complaint and must therefore be dismissed. *Id.* Based on the parties' proffered evidence, we agree that Plaintiff's previous EEO complaint with regard to the Ramey School hiring incident was premised only on reprisal. *Docket Document No. 8. DEX. 2, Exhs. 9, 10, 11.* The EEO Counselor's Report as well as the Report of Investigation discuss "reprisal" as the only basis for its filing and fails to mention national origin. *Docket Document No. 8, DEX. 2, Exhs. 9, 11.* National origin as a basis for Plaintiff's claim on the applicable EEO documents is nonexistent. *Id.* A claim of national origin discrimination cannot be said to reasonably result from a EEO filing based on retaliation. *White,* 221 F.3d at 263. Therefore, as Plaintiff concedes, Plaintiff did not exhaust his administrative remedies as to national origin discrimination with respect to Ramey School and any claim based on such grounds must be dismissed. *Docket Document No. 19.*

Plaintiff argues, however, that with respect to his non-selection at Ramey School, his present complaint alleges not only national origin discrimination, but also retaliation based on his previous EEO filing. *Docket Document Nos. 13, 19.* Plaintiff therefore avers that his current reprisal claim is properly before this court. *Docket Document No. 13.* Based on our liberal reading of Plaintiff's complaint, we cannot find that Plaintiff alleged discrimination on the basis of his prior EEO activ-ities in relation to his quest for the Assistant Principal position at Ramey School. Plaintiff's complaint states that "THE DEPARTMENT OF DEFENSE unlawfully discriminated against RIOS with respect to his terms, conditions and privileges of employment because of his national origin in violation of Title VII." *Docket Document No. 1.* With respect to this cause of action, Plaintiff eludes only to Defendant's "unlawful discriminatory practices," nothing further. *Id.* We note that in his second cause of action with respect to AES, Plaintiff specifically states that "THE DEPARTMENT OF DEFENSE took retaliatory actions against RIOS because he complained to the E.O.O. [sic], about its discriminatory practices, in violation of Title VII." *Id.* We simply cannot find that Plaintiff's first cause of action regarding Ramey School can be read to include reprisal. As such, Plaintiff's claims pertaining to Ramey School must be dismissed.

## C. Title VII McDonnell Douglas Burden–Shifting Framework

■ Title VII of the Civil Rights Act of 1964 provides that it shall be illegal to discriminate against any individual based on "his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). In situations where there is no direct evidence of discrimination, such as here, Title VII cases are analyzed under the burden-shifting framework established in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Fennell v. First Step Designs,* 83 F.3d 526, 534 (1st Cir.1996).

The *McDonnell Douglas* framework requires a plaintiff to adduce evidence to support a prima facie case of discrimination based on, in this case, either national origin or retaliation. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *see Ayala–*

*Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996).

■ Once the plaintiff establishes a prima facie case, the presumption arises that the employer unlawfully discriminated ·against the plaintiff. *Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 39 (1st Cir. 2003); *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 478 (1st Cir.1993). The burden of production, not persuasion, then shifts to the employer-defendant who must rebut the inference of discrimination by articulating some legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Feliciano de la Cruz v. El Conquistador Resort*, 218 F.3d 1, 5 (1st Cir.2000).

■ If the employer meets this burden, the inference of unlawful discrimination is waived, and the burden shifts back to the plaintiff to show that the employer's alleged justification is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. 1817; *see Che*, 342 F.3d at 39; *Feliciano de la Cruz*, 218 F.3d at 6. That is, within this circuit, in order to defeat a defendant's summary judgment motion, a plaintiff must produce evidence to show that: (1) the employer's given reason for the employment decision is a pretext; and (2) the true reason is discriminatory animus. *Feliciano de la Cruz*, 218 F.3d at 6. At this point, "the presumption of discrimination drops out of the picture, the *McDonnell Douglas* framework with its presumptions and burdens disappears, and the sole remaining issue is of discrimination vel non." *Zapata–Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 45 (1st Cir.2002)(internal citations omitted); *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 827 (1st cir.1991) (stating that after the employer rebuts the presumption the courts must "focus on the ultimate question, scrapping the burden-shifting framework in favor of considering the evidence as a whole. Thus, the critical inquiry becomes whether the aggregate evidence of pretext and retaliatory animus suffices to make out a jury question."); *see Garcia v. V. Suarez & Co.*, 288 F.Supp.2d 148, 154 (holding that at this final stage, the need for the orderly, strict burden-shifting framework is largely obviated and the focus instead becomes whether the evidence, as a whole, creates a triable question as to pretext and discriminatory animus). In determining whether to grant Defendant's summary judgement motion, "we must weigh all the circumstantial evidence of discrimination, including the strength of plaintiff's prima facie case and the employer's proffered reasons for its action, mindful that 'everything depends on individual facts.'" *Feliciano de la Cruz*, 218 F.3d at 7 (quoting *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 57 (1st Cir.1999)).

### 1. *National Origin Discrimination: Antilles Intermediate School*

■ In order to establish a prima facie case of "failure to promote" discrimination based on national origin, Plaintiff must show that: (1) Plaintiff belongs to a protected class, (2) he qualified for the position in question, (3) he was not hired despite his qualifications; and (4) the job was given to someone outside the protected group with roughly equivalent or lesser qualifications. *See Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir.2003); *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Keyes v. Sec'y of the Navy*, 853 F.2d 1016, 1023 (1st Cir.1988); *Acevedo v. Johnson & Johnson–Janssen Pharm.*, 240 F.Supp.2d 127, 132 (D.P.R. 2002).

■ Defendant concedes that Plaintiff has met his prima facie case. *Docket Document No. 8.* However, Defendant has

proffered and has produced sufficient credible evidence to show that there was a legitimate non-discriminatory reason for not hiring Plaintiff, namely that he was not the most qualified candidate for the position. *Id.; see Thomas*, 183 F.3d at 56 (stating that the employer must "allege 'reasons for its action, which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action' " (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993))).

Defendant having made this showing, the ultimate burden shifts back to Plaintiff to persuade the trier of fact that Defendant's reason was merely pretextual for what was, truly, discriminatory animus. *Zapata–Matos*, 277 F.3d at 45. Plaintiff must introduce evidence sufficient to allow a factfinder "reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action." *Thomas*, 183 F.3d at 57. Plaintiff argues that Defendant's discriminatory animus was the true reason he was not hired, and Defendant's claim that Mr. Van Buren ("Van Buren"), the candidate selected for the AIS Assistant Principal position, was better qualified is merely a coverup for this motive. *Docket Document No. 13.* We must decide whether Plaintiff has met his burden of persuasion and has offered evidence sufficient to show that Defendant's decision not to hire Plaintiff for the AIS Assistant Principal position was because he is Puerto Rican. *See Zapata–Matos*, 277 F.3d at 45; *see also Feliciano de la Cruz*, 218 F.3d at 6.

Defendant has submitted substantial evidence as to the evaluation process used to select the AIS Assistant Principal position. *Docket Document No. 8, DEX. 1, Exhs. B, D, C, F, DEX. 2, Exh 3.* Defendants used a two tier hiring system to rank applicants and determine which applicants, ranked as "highly qualified," would receive interviews for the position of AIS Assistant Principal. Upon receipt of the candidates' applications, Navy personnel staffing specialist Denise Jowers ("Jowers") in Pensacola, Florida chose 18 qualified applicants. *See Document Docket No. 8, DEX. 1, Exh. B.* Among the 18 applicants, Jowers deemed five applicants "highly qualified" based on a numerical ranking that considered administrative experience and education. *See Document Docket No. 8, DEX. 1, Exhs. B, D.* Plaintiff was not selected as "highly qualified." *Document Docket No. 8, DEX. 1, Exh. C.* On April 22, 1998, Jowers sent the list to the Superintendent of the ACSS, Dr. Richard Saddlemire ("Saddlemire"). *Document Docket No. 8, DEX. 1, Exh. D.*

On May 27, 1998, Saddlemire chose one of the "highly qualified" candidates for the position, but by August that candidate assumed an assistant principal position in another school. *Document Docket No. 8, DEX. 1, Exh. F.* Jowers reissued the list, this time with only four "highly qualified" candidates, and Plaintiff, once again, remained only as a qualified applicant. *See Document Docket No. 8, DEX. 1, Exh. G.* Although Jowers had the power to grant Plaintiff or other candidates an interview, she was authorized to do so only after dismissing the four "highly qualified" candidates. *Document Docket No. 8, DEX. 2, Exh. 3.* From among the four "highly qualified" applicants, acting Principal Joan Campbell ("Campbell") selected Van Buren for the position of AIS Assistant Principal. *Id.*

Defendant has stated that Van Buren was chosen as AIS Assistant Principal because his prior administrative experience made him a more qualified candidate than Plaintiff for the position. *Docket Document No. 8.* Defendant has submitted the

"Crediting/Rating Plan Guidelines for Open Competitive Positions," which serve as guidelines for considering an applicant's experience and education, and which show that experience is weighted four times more heavily than educational background. *Docket Document No. 8, DEX. 1, Exh. B.* Defendant has also offered Jower's score sheet which ranks each of the original candidates based on these criteria. *Docket Document No. 8, DEX. 1, Exh. C.* Based on their different levels of experience, Van Buren received a composite score of 98, placing him on the "highly qualified" list, and Plaintiff received a score of 78. *Id.*

Saddlemire, in his testimony before the Department of Defense Office of Complaint Investigations, stated that in choosing a candidate, Cambell relied heavily on their prior administrative experience. *Docket Document No. 8, DEX. 2, Exh. 3.* Campbell found that Van Buren, who had already worked as an assistant principal within ACSS and in the Washington, D.C. School System and who held other administrative posts in Washington, D.C. for over six years, had ample previous administrative experience as compared to Plaintiff, who had worked for approximately only six weeks as an assistant principal. *Docket Document No. 8, DEX. 2, Exhs. 3.*[1] Further, Saddlemire noted that in choosing an assistant principal, he highly considered the candidate's record for following through on and completing projects and that Plaintiff had not done so in some of the leadership positions he assumed. *Docket Document No. 8, DEX. 2, Exh. 41.*

Plaintiff counters that Van Buren's application was plagued by a host of problems which rendered him not only unqualified for the AIS Assistant Principal, but should have made him ineligible for the position in the first instance. *Docket Document Nos. 13, 19.* Plaintiff contends, inter alia, that Van Buren did not possess the necessary certification and he did not meet the minimum standards adopted by ACSS for an assistant principal position. *Id.* Plaintiff maintains that these criterion were purposefully ignored and that Plaintiff, who was "an ideal candidate for an administrative position," was disadvantaged by this. *Docket Document No. 13.*

Courts have specifically addressed workplace discrimination as it applies to educational institutions. In cases where a plaintiff brings suit for having been denied tenure, the plaintiff must convince the factfinder that the Defendant's articulated reasons "were 'obviously weak or implausible,' or that the tenure standards for prevailing at the tenure decisions were 'manifest unequally applied.'" *Brown v. Trs. of Boston Univ.,* 891 F.2d 337, 346 (1st Cir.1989) (citing *Kumar v. Bd. of Trs., Univ. of Mass.,* 774 F.2d 1, 15 (1st Cir.1985)). And as in other discrimination cases, a plaintiff in a tenure case "must ultimately show that a denial of tenure was motivated by illegal discrimination." *Mandavilli v. Maldonado,* 38 F.Supp.2d 180, 195 (D.P.R. 1999). We believe such reasoning is equally applicable to the present case because it is substantially similar to a denial of tenure claim.

As a primary matter, we find it questionable in this case whether Plaintiff has sufficiently demonstrated that the listed requirements for the AIS Assistant Principal position were manifestly unequally applied to the candidates. It is clear from the notations on Jower's tally sheet that she excluded candidates who had no valid administrative certificate. *Docket Document No. 8, DEX. 1, Exh. C.* We have been

---

1. Van Buren's and Plaintiff's employment applications for the AIS Assistant Principal position confirm Saddlemire's statements regarding their previous experience as assistant principals. *Docket Document No. 8, DEX. 2, Exhs. 1, 2.*

presented with little, if any, evidence which would allow us to infer that she would have disregarded this requirement in Van Buren's case. *Docket Document No. 22, Exh. 1.*

However, even if we were to accept Plaintiff's allegations regarding the validity of Van Buren's certifications and qualifications, this evidence would only suggest, at best, that Van Buren was improperly selected. Such evidence does not help us discern what Defendant's real reason may have been for selecting Van Buren instead of Plaintiff, let alone show that the actual reason for not selecting Plaintiff was based on his Puerto Rican origin. *See Feliciano de la Cruz,* 218 F.3d at 8; *see also Rodriguez–Cuervos v. Wal–Mart Stores, Inc.,* 181 F.3d 15, 22 (stating that "Title VII does not stop a company from demoting an employee for any reason-fair or unfair-so long as the decision to demote does not stem from a protected characteristic, here, race or ethnicity.").

Furthermore, although Plaintiff may intimate that Defendant's alleged deviation from its standard application requirements, coupled with the fact that Saddlemire was Caucasian and Campbell, African–American, is evidence of pretext for discrimination, *Docket Document No. 19,* we do not agree. *Rodriguez–Cuervos,* 181 F.3d at 21–22 (stating that the defendant's possible failure to follow its standard operating procedure was insufficient evidence of discrimination). "Title VII was not designed to transform courts into 'super personnel departments, assessing the merits-or even the rationality-of employers' nondiscriminatory business decisions." *Feliciano de la Cruz,* 218 F.3d at 8 (quoting *Mesnick,* 950 F.2d at 825).

Although Plaintiff's evidence may be, at best, indicative that the evaluation process did not treat Plaintiff fairly or that Defendant's proffered reasons for not hiring Plaintiff may have been inaccurate, Plaintiff does not present evidence that Defendant's actions were predicated on the basis of Plaintiff's national origin. *See Rodriguez–Cuervos,* 181 F.3d at 22; *see also Feliciano de la Cruz,* 218 F.3d at 9 (finding no evidence of national origin discrimination where Plaintiff failed to offer evidence that the defendant fired Puerto Ricans in greater proportion than non-Puerto Ricans, engaged in a pattern of firing Puerto Ricans and replacing them with non-Puerto Ricans, or adopted corporate policies discriminatory toward Puerto Ricans).

Aside from these grounds, Plaintiff offers scant evidence to show that Defendant's decision not to hire him was infected by national origin bias. In his official statement to the Department of Defense Office of Complaint Investigations Investigator, Plaintiff referred to a comment made by Saddlemire to him which he considered indicative of such discriminatory animus. *Docket Document No. 8, DEX. 2, Exh. 42.* According to Plaintiff, Saddlemire told him "you're young and single, you know, bilingual, go travel the world, go see the world, there's nothing for you here in ACSS." *Id.* We fail to see how this sole statement, standing alone, serves as any indication of Defendant's alleged unlawful motive. Without more, we cannot connect Defendant's actions in deciding not to hire Plaintiff to the fact that Plaintiff is Puerto Rican. As such, we dismiss Plaintiff claim on this ground.

### 2. *Retaliation: Antilles Elementary School*

In order to establish a prima facie case of retaliation Plaintiff must show that: (1) Plaintiff engaged in conduct protected by Title VII; (2) he was thereafter subjected to an adverse employment action; and (3) a causal connection existed be-

tween the protected conduct and the adverse action. *Che*, 342 F.3d at 38 (citing *Hernandez–Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir. 1998)).

Defendant does not contest that Plaintiff engaged in protected Title VII activity and that he suffered an adverse employment action in not being selected to fill the positions of either Assistant Principal or Principal at AES. *Docket Document No. 8.* Defendant submits, however, that Plaintiff is unable to establish any causal link between his protected EEO activity and Defendant's decision not to hire Plaintiff for said positions. *Id.* Furthermore, Defendant maintains that even if Plaintiff had shown the necessary nexus between his protected activity and Defendant's conduct, Defendant nonetheless had legitimate, non-discriminatory reasons for his hiring decisions.

### a. *Assistant Principal Position*

On June 18, 1999, Defendant issued Vacancy Announcement No. 99–PR–082 for the position of Assistant Principal at AES. *Docket Document No. 8, DEX. 2, Exh. 17.* Plaintiff submitted an application package for this position. *Docket Document No. 8, DEX. 2, Exh. 19.*

Plaintiff argues that Maria Schwarz ("Schwarz"), the candidate eventually chosen for the position, did not timely apply for the AES Assistant Principal position, and her post-hoc inclusion in the application process and ultimate selection as Assistant Principal evidences Defendant's intent to retaliate against Plaintiff. *Docket Document Nos. 13, 19.* Plaintiff proffers, however, two applications submitted by Schwarz: one for the Principal position, the other for Assistant Principal. *Docket Document No. 13, Exhs. 7,8; Docket Doc-*

*ument No. 8, DEX. 2, Exh. 21.* Plaintiff argues that the application for Assistant Principal was untimely, and further insinuates that the said application was forged. *Docket Document Nos. 13, 19.*

▮ Defendant submits evidence that Schwarz's application for AES Assistant Principal was timely and that any alleged mishandling of her application was due merely to an administrative snafu. *Docket Document No. 8, DEX. 2, Exh. 24.* Defendant offers the affidavit of Pamela M. McGrath, the Personnel Staffing Specialist in the Headquarters of Department of Defense Education Activity ("DoDEA"), who spoke with Schwarz regarding her inadvertent omission from the original referral list for the AES Assistant Principal position, verified her qualifications and confirmed the application was received during the appropriate time period, and added Schwarz's name to the amended referral list. *Id.* On September 10, 1999, the referral and selection list for the AES Assistant Principal position was issued which listed 16 qualified candidates for the position, including both Schwarz and Plaintiff. *Docket Document No. 8, DEX. 2, Exh. 23.* Plaintiff has not countered Defendant's proffered submissions. Based on the evidence before us, we cannot find that the allegedly fraudulent inclusion of Schwarz's name on the final AES Assistant Principal referral and selection list was due to anything more than an administrative blunder by Human Resources at Headquarters, Department of Defense, and we therefore see no reason to deem it improper.

▮ Even if we were to assume that Plaintiff had met his burden of establishing a prima facie case of Title VII retaliation[2], *see Santiago–Ramos v. Centennial*

---

2. Plaintiff seems to rely on the temporal proximity between his prior EEO filings and the adverse employment decision as the basis for the causal connection between the two. *See*

*P.R. Wireless Corp.,* 217 F.3d 46, 54 (1st Cir.2000); *Tex. Dept. of Cmty. Affairs,* 450 U.S. at 253, 101 S.Ct. 1089 (stating, plaintiff's burden at this stage "is not onerous"); *see also Zapata–Matos,* 277 F.3d at 45 (confirming the low standard for a prima facie showing), we nonetheless find that Defendant has proffered a legitimate non-discriminatory reason for hiring Schwarz, namely that she was the most qualified candidate for the position. *Docket Document No. 8; see Feliciano de la Cruz,* 218 F.3d at 5–6 (stating that "to rebut the plaintiff's prima facie case, an employer 'need only produce enough competent evidence, taken as true, to enable a rational factfinder to conclude that there existed a nondiscriminatory reason for the challenged employment action.' " (quoting *Ruiz v. Posadas de San Juan Assocs.,* 124 F.3d 243, 248 (1st Cir.1997))).

Defendant having articulated a non-discriminatory reason for its action, the ultimate burden shifts back to Plaintiff to persuade the trier of fact that Defendant's proffered reason was pretextual for a discriminatory decision. *Zapata–Matos,* 277 F.3d at 45; *Feliciano de la Cruz,* 218 F.3d

at 6. The main issue before us is whether Plaintiff has produced sufficient evidence to raise a genuine issue of material fact as to whether his failure to secure the AES Assistant Principal position was due to Defendant's retaliatory animus. *See Zapata–Matos,* 277 F.3d at 45.

In the present case, Defendant has submitted substantial evidence as to the evaluation process undertaken in making the ultimate hiring decision for the AES Assistant Principal position. *Docket Document No. 8, Exhs., 25, 26, 27, 28.* Upon receipt of the application packages for the candidates who had been referred for the AES Assistant Principal position, Superintendent Saddlemire and the Assistant Superintendent Dr. Bruce Jeter ("Jeter") identified the eight most qualified individuals to be interviewed. *Docket Document No. 8, Exh. 25.* A selection panel comprising Saddlemire, Jeter, and Gladys Oquendo, Assistant Principal of Antilles Middle School, then interviewed the candidates using a set of predetermined questions. *Docket Document No. 8, Exh. 27.*

The panel initially convened on September 3, 1999 and ranked Harry Hamilton as

*Calero–Cerezo,* 355 F.3d at 25 (indicating that a showing of an adverse employment action soon after the employee engages in protected Title VII activity is indirect proof of the requisite causal connection). We are doubtful, however, as to whether the time period between Plaintiff's EEO filings and Defendant's decision not to hire him for the AES Assistant Principal Position is short enough to establish this causal connection. *See, e.g., id.* (stating that "[t]hree and four month periods have been held insufficient to establish a causal connection based on temporal proximity"). Based on the evidence before us, it seems as though Plaintiff's most recent EEO complaint prior to the alleged act of retaliation was formally filed on July 6, 1999. *Docket Document No. 8, DEX. 2, Exh. 9.* Although in both his pre-complaint and formal complaint, Plaintiff indicated that October 18, 1999 was the date of the alleged discriminating event, *Docket Document No. 8, DEX. 2, Exh. 35, 36,*

in a subsequent sworn declaration, Plaintiff stated that the discriminating action occurred on September 26, 1999. *Docket Document No. 8, DEX. 2, Exh. 38.* Because the time period in question is somewhat unclear and because Defendant does not forward this argument to show that Plaintiff has failed to demonstrate the necessary causal link, we assume, for purposes of our analysis, that Plaintiff has met the third prong of his prima facie case.

Furthermore, because of the uncertainty and conflicting evidence regarding the date the alleged discriminatory action occurred, we decline to entertain Defendant's argument that Plaintiff's EEO complaint (pertaining to his non-selection as both AES Assistant Principal and AES Principal) was untimely. *Docket Document No. 8.* Such a determination, as our opinion makes clear, is ultimately unnecessary.

the top-rated candidate for the position. *Docket Document No. 8, Exhs. 25, 27.* After the corrected selection and referral list was issued, adding Schwarz's name, the panel reconvened to interview her. *Docket Document No. 8, Exh. 27.* Although the selection panel ranked Plaintiff as the third highest scoring candidate, the members unanimously agreed that based on, inter alia, her educational background and experience, Schwarz was the best qualified candidate overall.[3] *Id.* She was thereby appointed to and assumed the position of AES Assistant Principal effective September 26, 1999. *Docket Document No. 8, Exhs. 27, 30.*

In his oppositions to Defendant's summary judgment motion, Plaintiff argues only that Schwarz's application for the AES Assistant Principal position was improperly submitted and therefore should not have been considered, a contention already discussed and rejected above. *Docket Document Nos. 13, 19.* Plaintiff neither argues nor shows any evidence that Defendant's decision to hire Schwarz was otherwise improper. *Id.* Thus, Plaintiff fails to forward facts showing that Defendant's hiring decision, allegedly based on Schwarz's superior qualifications in comparison to Plaintiff's, was a mere sham or pretext for Defendant's retaliatory animus. *Calero–Cerezo,* 355 F.3d at 26; *see Petitti v. New England Tel. & Tel. Co.,* 909 F.2d 28, 32 (1st Cir.1990) (requiring plaintiff to point to specific facts "giving rise to an inference of discriminatory intent."). Based on Defendant's proffered

testimony, Plaintiff had inferior knowledge of early childhood education and the Work Sampling Assessment System, as well as his lack of teaching experience in the early childhood classroom. *Docket Document No. 8, Exh. 26.* In contrast, Schwarz demonstrated a more impressive personal demeanor during her interview and had been involved in in-service training scenarios with other school systems, making her a highly qualified candidate. *Docket Document No. 8, Exh. 26.*

Again, we note that in evaluating Defendant's hiring decision, "[t]he Court cannot and will not second guess the business decisions of an employer" in deciding which employees to promote. *Acevedo,* 240 F.Supp.2d at 134. As such, we cannot find that Defendant's decision not to hire Plaintiff as AES Administrative Principal was due to retaliation for his prior EEO filing and accordingly, we grant Defendant's summary judgment motion as to this claim.

### b. *Principal Position*

On June 25, 1999, Defendant issued Vacancy Announcement No. 99–PR–085 for the position of Principal at AES. *Docket Document No. 8, DEX. 2, Exh. 18.* Plaintiff submitted an application package for this position. *Docket Document No. 8, DEX. 2, Exh. 20.* John Christopher Coxon ("Coxon"), who had been assigned to act as interim AES Principal until a permanent replacement could be hired, also submitted an application position for this position.

---

**3.** In his affidavit, Jeter also cited Schwarz's experience in Working Sampling and Assessment, experience possessed by neither Hamilton nor Plaintiff, as a substantial factor in deeming her most qualified for the position. *Docket Document No. 8, Exh. 25.* Saddlemire, in his affidavit, noted that Schwarz and Hamilton both received 241 points in the panel's ranking system and Plaintiff received 233 points. *Docket Document No. 8, Exh. 26.*

The panel determined that Schwarz was considered a stronger candidate than Hamilton in the elementary school environment while Hamilton had greater experience at the secondary level. *Id.* Furthermore, Saddlemire stated that "Schwarz had a better knowledge of early childhood education and the work sampling assessment system than Mr. Rios." *Id.*

*Docket Document No. 8, DEX. 2, Exh. 15.* Plaintiff avers that he was not selected for AES Principal due to Defendant's retaliatory animus based on Plaintiff's previous EEO filing. *Docket Document No. 13.*

In determining whether the parties have met their respective burdens under the Title VII *McDonnell Douglas* framework, we follow—and therefore need not comprehensively restate—our legal analysis outlined above regarding Plaintiff's AES Assistant Principal claim, a claim which closely parallels the one asserted here.

As above, we assume, with reservation, that Plaintiff has met his burden of establishing a prima facie case of retaliation. Defendant has alleged, however, that they had a non-discriminatory rationale for hiring Coxon as AES Principal, namely, that Plaintiff was not the most qualified candidate for the position. *Docket Document No. 8.* Defendant has submitted substantial evidence as to the evaluation process undertaken in making the ultimate hiring decision for the AES Principal position. *Docket Document No. 8, DEX. 2, Exhs. 22, 25, 26.*

On August 3, 1999, a referral and selection list for the AES Principal position was issued which listed 17 qualified candidates for the position, including both Coxon and Plaintiff. *Docket Document No. 8, DEX. 2, Exh. 22.* Upon receipt of the listed candidates' application packages, Jeter and Saddlemire met to review and evaluate the candidates' qualifications. *Docket Document No. 8, DEX. 2, Exh. 25.* They then identified the top six ranked candidates, who were offered interviews. *Id.* Plaintiff was not selected as one of the highly qualified candidates. *Docket Document No. 8, DEX. 2, Exh. 31.* After selecting these interviewees, an interview panel, comprising a parent representative, a military Command representative, and a sitting principal who served as an ACSS repre-

sentative, met with the candidates and ranked them according to a ten point scale. *Docket Document No. 8, DEX. 2, Exhs. 25, 32.* Coxon was ultimately chosen as the best qualified candidate and was recommended to Saddlemire, and, in turn, his supervisor, for selection. *Docket Document No. 8, DEX. 2, Exhs. 25, 26, 33.*

According to Jeter's affidavit, the top candidates selected for interviews were chosen based on their "experience in an administrative (principal or assistant principal) position, District Office experience, instructional experience at the elementary level, technology, and ability to effectively interface with the Fort Buchanan military command." *Docket Document No. 8, DEX. 2, Exh. 25.* Specifically, Jeter claims that Plaintiff did not demonstrate any experience as a principal or assistant principal, except for a brief, few week period, and this lack of experience in previously determined hiring criteria was the primary reason for his not being offered an interview. *Id.*

Saddlemire, in his affidavit, confirmed that, except for a few weeks spent in an acting assistant principal position, Plaintiff had no administrative experience. *Docket Document No. 8, DEX. 2, Exh. 26.* Although Coxon also had no direct experience as a principal or assistant principal, Saddlemire noted that Coxon had approximately one and a half years experience working in the ACSS District Office where he worked closely and constantly with principals and assistant principals, gaining insight into their duties and responsibilities. *Id.*

Defendant having proffered a legitimate justification for such decision-making, the burden ultimately rests with Plaintiff to show that such action was merely a pretext for Defendant's retaliatory animus. *See Zapata–Matos,* 277 F.3d at 45. To such end, Plaintiff asserts that his qualifi-

cations are superior to Coxon's and that Coxon lacked or improperly obtained the certifications necessary to assume the Principal position. *Docket Document Nos. 13, 19; Docket Document No. 8, DEX. 2, Exh. 38.* Plaintiff submits that he has valid professional certificates as an elementary school teacher, secondary science teacher, and for school administrator at the elementary and secondary levels. He also has several years of teaching experience in grades kindergarten through second, has been involved in ACSS-wide committees and school improvement teams, and has approximately 45 days experience as an acting assistant principal. *Docket Document No. 8, DEX. 2, Exh. 38.* Further, Plaintiff claims that: (1) Coxon did not possess a valid professional certificate for either a teacher or school administrator;. (2) the documents submitted to meet this requirement were not issued by a valid authority; and (3) his credentials regarding his previous alleged position as AES Principal for the 1998–1999 school year were misstated. Thus, Plaintiff maintains that Coxon was wrongfully certified as having been hired as Principal and Assistant Superintendent before he was hired. *Docket Document Nos. 13, 19; Docket Document No. 8, DEX. 2, Exh. 38.*

Vacancy Announcement No. 99–PR–085 advertising the position of AES Principal, issued by the DoDEA, Domestic Dependant Elementary and Secondary Schools, outlines the qualification requirements for the AES Principal Position:

> Applicants must have a Master's degree from an accredited institution with 20 semester hours in administration, curriculum, supervision, and related fields; 2 years of experience as a classroom teacher (K–12); and a valid school Administrator certificate, issued by a state,

the Commonwealth of Puerto Rico, DODDS, or the U.S. Virgin Islands. School Administrator certificate must be in English. Applicants *must* attach a copy of their current school Administrator Certification to their application. Failure to submit the required certification will result in an ineligible rating and will not be a basis for subsequent appeal or grievance.

*Docket Document No. 8, DEX. 2, Exh. 18; Docket Document No. 22, Exh. 8.*

It is clear from the Vacancy Announcement, as well as the proffered evidence pertaining to the AES Principal position hiring process, that decisions regarding a candidate's initial eligibility for the position are made by the DoDEA in Washington, D.C. *Docket Document No. 8, DEX. 2, Exhs. 18, 22.* Saddlemire and Jeter had no input in determining which applicants possessed the necessary qualifications and documentation to be included in the initial referral and selection list, on which both Plaintiff and Coxon were listed. *Id.* Saddlemire stated in his affidavit that "Mr. Coxon was referred to the AES Principal position by Human Resources personnel at the Headquarters DoDEA level as a fully qualified candidate and I do not and have no reason to question his professional qualifications." *Docket Document No. 8, DEX. 2, Exh. 26.* Therefore, even if Plaintiff's arguments regarding the validity of Coxon's credentials and certificates were true,[4] Plaintiff has shown no evidence connecting Coxon's initial qualification requirements to Defendant's alleged retaliation in failing to list him as a highly qualified candidate and providing him with an interview. *See Feliciano de la Cruz*, 218 F.3d at 8 (explaining that mere unfairness, without a showing of discrimination, in an employment decision is not sufficient to state a claim under Title VII.)

---

4. Such allegations are unsupported· by the documentation in Coxon's submitted application package. *Docket Document No. 8, DEX. 2, Exh. 15.*

The only other evidence which points even slightly to the potential existence of retaliation is Defendant's proferred declaration of Alfred C. Lohse ("Lohse"), former AES Assistant Principal, who attended the meeting at which Saddlemire announced that Coxon would be serving as interim AES Principal until the vacancy was filled. *Docket Document No. 8, DEX. 2, Exh. 12.* Although Lohse stated that he was surprised by this decision and that he thought Plaintiff had been discriminated against, he also admitted to having no direct knowledge of any such discrimination nor did he submit any grounds for this belief. *Id.* Plaintiff introduced no further evidence to substantiate Lohse's written declaration nor did he rely on it in any significant way to bolster his argument. *Docket Document No. 13.* We simply cannot find this individualized and unsubstantiated statement to be sufficient to show that Defendant's nondiscriminatory justification for hiring Coxon rather than Plaintiff was mere pretext for retaliatory discrimination.

Because Plaintiff has failed to show that his failure to secure the position of AES principal was due to retaliation for his prior EEO filing, we grant Defendant's summary judgment motion as to this claim.

## IV.

### Conclusion

In accordance with the foregoing, we **GRANT** Defendant's motion for summary judgment, *Docket Document No. 8,* and **DENY** Plaintiff's motion for summary judgment. *Docket Document No. 19.* Plaintiff's case is thereby dismissed. Judgment to be entered accordingly.

**IT IS SO ORDERED.**